**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF WASHINGTON**

Case No. 13-CV-03073-VEB

MIGUEL JESUS GARCIA,

                Plaintiff,

vs.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                Defendant.

DECISION AND ORDER

## I. INTRODUCTION

In November of 2009, Plaintiff Miguel Jesus Garcia applied for Supplemental Security Income ("SSI") benefits and Disability Insurance Benefits ("DIB") under the Social Security Act. The Commissioner of Social Security denied the applications.

Plaintiff, represented by D. James Tree, Esq., commenced this action seeking judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3). The parties consented to the jurisdiction of a United States Magistrate Judge. (Docket No. 7).

On May 1, 2014, the Honorable Rosanna Malouf Peterson, Chief United States District Judge, referred this case to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 29).

## II. BACKGROUND

The procedural history may be summarized as follows:

On November 10, 2009, Plaintiff applied for SSI benefits and DIB, alleging disability beginning March 14, 2009. (T at 125-32, 133-36).[1] The applications were denied initially and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). On January 12, 2012, a hearing was held before ALJ Marie Palachuk. (T at 43). Plaintiff appeared with an attorney and testified. (T at 54-61, 62-64). The ALJ also received testimony from Polly Peterson, a vocational expert (T at 61-62, 64-69). and Dr. Richard Hutson, a medical expert. (T at 47-54).

---

[1] Citations to ("T") refer to the administrative record at Docket No. 13.

On February 2, 2012, the ALJ issued a decision denying the applications for benefits. (T at 19-36).   The ALJ's decision became the Commissioner's final decision on May 23, 2013, when the Appeals Council denied Plaintiff's request for review. (T at 1-6).

On July 16, 2013, Plaintiff, acting by and through his counsel, timely commenced this action by filing a Complaint in the United States District Court for the Eastern District of Washington. (Docket No. 5). The Commissioner interposed an Answer on October 21, 2013. (Docket No. 12).

Plaintiff filed a motion for summary judgment on February 14, 2014. (Docket No. 23).   The Commissioner moved for summary judgment on April 28, 2014. (Docket No. 28).   As noted above, the parties consented to the jurisdiction of a Magistrate Judge. (Docket No. 7).

For the reasons set forth below, the Commissioner's motion is denied, Plaintiff's motion is granted, and this case is remanded for further proceedings.

# III. DISCUSSION

## A.    Sequential Evaluation Process

The Social Security Act ("the Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a plaintiff shall be determined to be under a disability only if any impairments are of such severity that a plaintiff is not only unable to do previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if the person is engaged in substantial gainful activities. If so, benefits are denied. 20 C.F.R. §§ 404. 1520(a)(4)(i), 416.920(a)(4)(i). If not, the decision maker proceeds to step two, which determines whether plaintiff has a medially severe impairment or combination of impairments. 20 C.F.R. §§

404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, plaintiff is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents plaintiff from performing work which was performed in the past. If a plaintiff is able to perform previous work that plaintiff is deemed not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, plaintiff's residual functional capacity (RFC) is considered. If plaintiff cannot perform past relevant work, the fifth and final step in the process determines whether plaintiff is able to perform other work in the national economy in view of plaintiff's residual functional capacity, age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon plaintiff to establish a *prima facie* case

of entitlement to disability benefits. *Rinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once plaintiff establishes that a mental or physical impairment prevents the performance of previous work. The burden then shifts, at step five, to the Commissioner to show that (1) plaintiff can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" that plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

## B.    Standard of Review

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold a Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983)(citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-02 (9th Cir. 1989). Substantial evidence "means such evidence as a reasonable mind might accept as

adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebreeze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989)(quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the Commissioner, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

DECISION AND ORDER – GARCIA v COLVIN 13-CV-03073-VEB

## C.    Commissioner's Decision

The ALJ found that Plaintiff had not engaged in substantial gainful activity since March 14, 2009 (the alleged onset date) and met the insured status requirements under the Social Security Act through December 31, 2013. (T at 24). The ALJ determined that Plaintiff's lumbar degenerative disc disease and obesity were impairments considered "severe" under the Act. (Tr. 24).

However, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments set forth in the Listings. (T at 24-25).  The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work, as defined in 20 CFR § 416.967 (b) and §404.1567 (b), except that he could only balance, stoop, kneel, crouch, or crawl occasionally; could never climb ladders, ropes, or scaffolds; must avoid concentrated exposure to temperatures, wetness, and humidity; and avoid all exposure to hazards. (T at 25-29).

The ALJ found that Plaintiff could not perform his past relevant work as an order filler, painter, grape harvest workers, construction worker, or caregiver. (T at 29).  However, considering Plaintiff's age (31 years old on the alleged onset date), education (high school), and RFC (light work, with non-exertional limitations as

outlined above), the ALJ determined that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T at 29-30).

As such, the ALJ concluded that Plaintiff had not been disabled, as defined under the Act, from November 10, 2009 (the alleged onset date), through February 2, 2012 (the date of her decision) and was therefore not entitled to benefits. (Tr. 30-31). As noted above, the ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. (Tr. 1-6).

**D.      Plaintiff's Arguments**

Plaintiff contends that the Commissioner's decision should be reversed. He offers two (2) main arguments in support of this position. First, Plaintiff contends that the ALJ erred by discounting the opinions of Plaintiff's treating and examining physicians. Second, he challenges the ALJ's credibility determination. This Court will address both arguments in turn.


**IV. ANALYSIS**

**A.      Treating/Examining Physician Opinions**

Dr. Adam Hoverman had a significant treating relationship with Plaintiff. (T at 550, 862). During the spring of 2009, Dr. Hoverman opined on multiple occasions that Plaintiff could not return to "full duty work" and could not lift, climb,

bend, or stoop. (T at 509, 515, 518, 523, 524). In October of 2009, Dr. Hoverman completed a physical evaluation form, in which he noted that Plaintiff had experienced minimal improvement from treatment. (T at 582). He opined that lumbar radiculopathy would cause marked to severe limitations in Plaintiff's ability to perform basic work-related activities. (T at 583). Dr. Hoverman assessed several significant limitations with regard to Plaintiff's mobility, agility, and flexibility, but opined that he could perform sedentary work. (T at 583).

Dr. Hoverman completed another evaluation in March of 2010. He again assessed severe limitations with regard to Plaintiff's ability to perform basic work-related activities. (T at 579). He opined that Plaintiff's overall work level was "severely limited." (T at 579). In May of 2010, Dr. Hoverman reported that Plaintiff needed to avoid any lifting/carrying/pushing or pulling over 5 pounds; any stooping/kneeling/twisting/bending; and noted that he would need to rest after standing or sitting for more than 30 minutes. (T at 718). He opined that Plaintiff was limited to sedentary work. (T at 718).

In October of 2010, Dr. Phillip Mendoza, another treating physician, opined that Plaintiff could not perform any lifting, would need to change positions every 15 minutes, and needed 2 hours per day to rest lying down. (T at 727). Dr. Mendoza concluded that Plaintiff was limited to sedentary work. (T at 728). He recommended

DECISION AND ORDER – GARCIA v COLVIN 13-CV-03073-VEB

physical therapy, analgesic pain medications, and consultation with a pain specialist. (T at 728).

In June of 2011, Dr. Mendoza reported that Plaintiff could not maintain any position for greater than 10 minutes, would have trouble focusing due to pain, and could not lift more than 5 pounds. (T at 730). He opined that Plaintiff could perform sedentary work. (T at 731).

In September of 2011, Dr. Mendoza reported that Plaintiff would need to lie down 5-7 times for 30 minutes to 1 hour each day due to back pain. (T at 698). He noted that medications made Plaintiff drowsy and did not relieve his pain. (T at 698). Dr. Mendoza described Plaintiff's prognosis as poor and noted that increased activity worsened his condition. (T at 699). In December of 2010, Dr. Mendoza again noted Plaintiff's need to lie down frequently during the day, opined that he was restricted from heavy lifting and prolonged sitting or standing, but characterized Plaintiff's prognosis as "good." (T at 696). He indicated that Plaintiff would likely miss 4 or more days per month because of his conditions. (T at 697).

Dr. Daniel Seltzer, an independent medical examiner, completed an examination in October of 2009. He diagnosed lumbar sprain/strain, multi-level lumbar disc protrusion (L4-5 and L5-S1), and possible lumbar radiculopathy (right greater than left), along with a possible psychological condition or pain disorder. (T

at 886). Dr. Seltzer opined that Plaintiff was not a candidate to return to work and should not engage in any activities beyond a sedentary level. (T at 888).

Dr. Fred Thysell, another medical examiner, noted that Plaintiff should not be released to work. (T at 894). He completed a medical opinion questionnaire in October of 2011, in which he opined that Plaintiff was limited in terms of bending and lifting. (T at 914).

The ALJ gave Dr. Hoverman's opinions "little weight." (T at 28). He likewise discounted the findings of Dr. Seltzer, Dr. Mendoza, and Dr. Thysell in rendering her assessment of Plaintiff's residual functional capacity. (T at 28-29).

For the reasons that follow, this Court finds that the ALJ did not adequately develop the record and a remand is required.

The ALJ's primary reason for discounting the treating/examining physician opinions was her conclusion that their opinions were largely based on Plaintiff's subjective complaints, which the ALJ found to be not credible. (T at 28). The ALJ cited evidence suggesting pain magnification and malingering in support of her decision to discount Plaintiff's credibility. In particular, in April of 2009, Drs. William Stump and Chester McLaughlin performed a joint independent medical examination. They observed "[m]arked nonphysiologic pain behavior . . . with significant inconsistencies to suggest malingering." (T at 490). Dr. Stump and Dr.

McLaughlin believed there was a "voluntary component" to Plaintiff's pain behavior. (T at 491).

However, the ALJ did not take adequate account of evidence suggesting that Plaintiff's pain behavior might be the result of a psychological disorder.

First, Plaintiff's treating and examining providers, who had the opportunity to observe him over an extended period of time, credited his complaints, which suggest that the complaints may have been genuine (albeit perhaps a function of a psychological issue, as opposed to having a physiological cause).

Second, the record contained several recommendations that Plaintiff be evaluated for a psychological pain disorder.  Dr. Hoverman (who had a lengthy treating relationship with Plaintiff) recommended at least three times that Plaintiff receive a psychological evaluation and testing for a psychological condition and/or pain disorder. (T at 639, 647, 650, 719).  In a March 2011 treatment note, Vern Commet, a treating nurse practitioner, opined that it might be beneficial for Plaintiff to "seek psychological counseling and undergo therapy for his pain disorder." (T at 837).  In a January 2012 report submitted to the Appeals Council, Dr. Seltzer (an examining physician) noted a "[p]ossible psychological condition or pain disorder," which he "deferred to the appropriate psychological specialist." (T at 924).

DECISION AND ORDER – GARCIA v COLVIN 13-CV-03073-VEB

There is no question that "the ALJ has a duty to assist in developing the record." *Armstrong v. Commissioner of Soc. Sec. Admin.*, 160 F.3d 587, 589 (9th Cir. 1998); 20 C.F.R. §§ 404.1512(d)-(f); *see also Sims v. Apfel*, 530 U.S. 103, 110-11, 147 L. Ed. 2d 80, 120 S. Ct. 2080 (2000) ("Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits . . . .").

One of the tools the ALJ has to develop the record is the ability to order a consultative examination, *i.e.*, "a physical or mental examination or test purchased for [a claimant] at [the Commissioner's] request and expense." 20 C.F.R. §§ 404.1519, 416.919.   The ALJ's duty to develop the record via a consultative examination is generally triggered by ambiguous evidence. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).

Here, given the evidence discussed above, the ALJ should have ordered a psychiatric consultative examination before discounting the treating/examining physicians' opinions.  Although, some (non-treating) physicians believed Plaintiff's pain behavior was the result of "voluntary" malingering, others suggested that it might have been caused by a psychological disorder and recommended further evaluation.   Notably, the providers recommending further evaluation had longer term, treating relationships with Plaintiff, which should have given their assessments

greater weight. Accordingly, the ALJ erred in failing to appropriately develop the record by failing to obtain a psychiatric consultative examination and a remand is required.

## B.    Credibility

A claimant's subjective complaints concerning his or her limitations are an important part of a disability claim. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004)(citation omitted). The ALJ's findings with regard to the claimant's credibility must be supported by specific cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Leste*r, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

However, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. See 42 U.S.C. §§423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. § 404.1529(b), 416.929; SSR 96-7p.

In this case, the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but found his statements concerning the intensity, persistence, and limiting effects of the symptoms not fully credible. (T at 25).  The ALJ cited the lack of objective medical evidence supporting Plaintiff's allegations, along with the suggestions of malingering, but failed to adequately account for the indications (including observations and recommendations from treating physicians) that Plaintiff's pain behavior might be caused by an underlying psychological disorder.  This assessment cannot be sustained for the reasons outlined above.  Thus, Plaintiff's credibility should be reassessed on remand following further development of the record (in the form of a psychological consultative evaluation) on remand.

## C.    Remand

In a case where the ALJ's determination is not supported by substantial evidence or is tainted by legal error, the court may remand the matter for additional proceedings or an immediate award of benefits. Remand for additional proceedings is proper where (1) outstanding issues must be resolved, and (2) it is not clear from the record before the court that a claimant is disabled. *See Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).

DECISION AND ORDER – GARCIA v COLVIN 13-CV-03073-VEB

Here, as set forth above, there is ambiguous evidence concerning Plaintiff's pain behavior. This ambiguity can and should be addressed on remand via a consultative examination to assess the nature and extent of Plaintiff's mental health problems, if any. The ALJ shall thereafter conduct a new sequential evaluation, taking into consideration the consultative examination as well as all other credible evidence of record.

# V. ORDERS

**IT IS THEREFORE ORDERED** that**:**

Plaintiff's motion for summary judgment, **Docket No. 23**, is **GRANTED;**

The Commissioner's motion for summary judgment, **Docket No. 28**, is **DENIED**;

This case is remanded for further proceedings consistent with this Decision and Order;

The District Court Executive is directed to file this Order, provide copies to counsel, enter judgment in favor of Plaintiff and hold this case open for a period of

sixty (60) days to allow Plaintiff's counsel an opportunity to apply for an award of attorneys' fees and costs.

DATED this 18th day of September, 2014.

/s/Victor E. Bianchini

VICTOR E. BIANCHINI
UNITED STATES MAGISTRATE JUDGE

DECISION AND ORDER – GARCIA v COLVIN 13-CV-03073-VEB